**ARIBA, INC., Plaintiff,**

v.

**EMPTORIS, INC., Defendant.**

**Civil Action No. 9:07–CV–90.**

United States District Court,
E.D. Texas,
Lufkin Division.

Oct. 17, 2008.

Bryce Warren Baker, Amy Kathleen Van Zant, Brian D. Kaider, and Jaideep Venkatesan of Heller Ehrman LLP–Menlo Park, Menlo Park, CA, Jennifer Esther Chen and Robert Thomas Haslam, III of Covington & Burling LLP–Redwood Shores, Redwood Shores, CA, Matthew James Hawkinson and Robert Daniel Fram of Covington & Burling LLP, San Francisco, CA, Amanda Aline Abraham, Brendan Clay Roth, and Carl R. Roth of The Roth Law Firm, Marshall, TX, Nathan Evan Shafroth of Heller Ehrman LLP–San Francisco, San Francisco, CA, for Plaintiff.

David J. Beck and Michael Ernest Richardson of Beck Redden & Secrest, Houston, TX, Eric D. Levin of Hinckley Allen & Snyder LLP, Jeffrey S. Gleason, Jonathan Andron, Stephen M. Muller, Wayne L. Stoner, and Wyley S. Proctor of Wilmer, Cutler Pickering Hale & Dorr LLP, Boston, MA, Timothy Robert Jezek, Los Angeles, CA, for Defendant.

## ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

RON CLARK, District Judge.

Ariba moves for summary judgment of direct infringement of claim 82 of United States Patent No. 6,216,114 ("the '114 Patent"), which describes a system for controlling overtime in an electronic auction. Specifically, claim 82 describes extending the time during which bids may be entered if a "trigger bid" is received during a particular time interval before the auction's closing time has passed.

The critical issue is when, according to the claim language, the extension period begins. The accused Emptoris products provide for an extension period that begins when such a trigger bid is received. Emptoris argues that claim 82 describes only an extension period created by the addition of time to the end of the initial closing time.

Emptoris' arguments rely upon an unduly restrictive interpretation of both the claim language and the court's claim construction. Claim 82 is broader than Emptoris suggests and includes time extensions that extend time from the point when the trigger bid is received. Therefore, summary judgment of infringement is appropriate.

### Background

Ariba filed suit against Emptoris claiming infringement of several patents including the '114 Patent. The court construed disputed terms in the *Markman* order. Doc. # 145. The parties further agreed to the interpretation of additional terms. Doc. # 147 and # 252. The patents describe methods and systems for conducting electronic auctions in an industrial procurement market. The '114 Patent describes what type of bid will trigger overtime for a given lot.[1]

### Legal Standard

The party moving for summary judgment under Fed.R.Civ.P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Movant may show

---

1. A detailed discussion of the technology at issue appears in the *Markman* order. *See* Doc. # 145.

that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Fed. R.Civ.P. 56 requires the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514.

Only a genuine dispute over a material fact (a fact which might affect the outcome of the suit under the governing substantive law) will preclude summary judgment. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The dispute in this case is genuine if the evidence is such that a reasonable jury, properly instructed on the correct evidentiary standard, could return a verdict of non-infringement. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514 ("determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."). If the factual context renders a claim implausible (for example if the claim simply makes no economic sense) nonmovants "must come

forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

Fed.R.Civ.P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. The Supreme Court has stressed that the inferences be reasonable. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 468, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992).

## Infringement of Claim 82 of the '114 Patent

■ Ariba asserts that the Emptoris 5.2, 6.1 and 7.0 products literally infringe claim 82 of the '114 Patent as all of the claim limitations are met. Emptoris raised no issue of fact or law as to any claim limitation that does not include the term "second time interval." Its position was succinctly stated: "Emptoris' accused products do not infringe claim 82 of the '114 patent because they do not contain two elements of the claim: 'extending said first closing time' and 'second time interval.'" Emp. Opp., Doc. # 172 at 9.

Emptoris' software controls an electronic auction using a computer. During the auction multiple bids are received by the Emptoris products, including a bid other than the best bid price. The Emptoris software orders bids from a best price to worst price and determines whether overtime is triggered by a trigger bid occurring during a prescribed time period.[2]

The parties' dispute centers on the court's claim construction of "second time

2. Even though Emptoris did not raise an issue concerning the other claim limitations, Appendix A outlines how the accused products meet those limitations.

interval," which appears in two limitations of claim 82:

(a): *defining a first time interval, a second time interval, a first overtime condition and a first closing time for a first lot, wherein said first overtime condition comprises;* and

(c): *extending said first closing time using said second time interval in accordance with said determination.*

The court defined "second time interval" as "a time interval by which a scheduled closing time, whether an initially-scheduled time or an extended time, is extended." [3] Only a bid received within the "first time interval," prior to the end of the auction, will extend the time frame during which bids may be received, i.e. will result in an "overtime."

The parties agree that Emptoris' software adds an "extension period" beginning at the point when a "trigger" bid is received. For example, a bid placed at 3:58 p.m., with a time period for extra bidding of 10 minutes, will extend the auction to 4:08 p.m., even though it was scheduled to end at 4:00 p.m. as diagramed below.

---

3. The parties agreed to the following construction of the other terms in these limitations:

"First time interval" means "a predetermined time period during which a bid can trigger overtime."

"Overtime condition" means "a property of a bid that triggers overtime."

"Overtime" means "a period of extra bidding."

"Closing time" means "the time that the bidding is scheduled to end."

a) Scheduled time line of the auction before any bids are received, highlighting the "first time interval"

b) Time line illustrating the receipt of a "trigger bid" that extends the auction using an extension period of 10 minutes from the time the trigger bid is received.

Emptoris argues that the claim language and the court's claim construction require time extensions to be added after the scheduled end time, as diagramed below:

c) Time line illustrating an extension of the auction using an extension period of 10 minutes from the originally scheduled end time.

Emptoris asserts that because its time extension is not added to the end of the auction, it is not a "second time interval," and even if the court finds that it is a "second time interval," it is not the interval *by which* time is extended. Def. Opp.,

Doc. # 172 at 9. Ariba argues that the time interval need only be used in some manner to extend the auction's closing time.

Neither party previously presented this precise issue or requested clarification of the court's claim construction. Nevertheless, since this dispute goes directly to the scope of the claim, the court will clarify its construction. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.,* 521 F.3d 1351 (Fed.Cir.2008).

At the *Markman* hearing, the parties did argue about whether the second time interval had to be a fixed period of time. As the court explained in its *Markman* order, the length of the extended period could be flexible depending upon the claim language, reasoning that "the 'predetermined' aspect of Emptoris' proposed definition is excessively restrictive. Whether there is flexibility in a particular invention will depend on the language of the claim using the term. Flexibility cannot be excluded by the definition of the term." *Markman* Order, Doc # 145 at 16.[4]

Likewise, limitation (a) of claim 82 does not restrict when the second time interval begins, merely stating that a "second time interval" must be defined. Limitation (c) requires that the closing time interval be extended *"using* said second time interval" (emphasis added).

One of ordinary skill in the art would know that there are many ways of "using" the second time interval. Contrasting the language of claim 82, limitation (c) with that of claim 83, limitation (e), illustrates that the patentee intended a broader limitation in claim 82 and a more narrow one in claim 83. Both claims extend the auction's bidding time. Claim 82, limitation (c) extends time *"using* said second time interval," while claim 83, limitation (e) does so *"by* an amount of time" (emphasis added). The patentee utilized the more open ended construction of the word "using" in claim 82.

■ As a general rule, the court will presume a "difference in meaning and scope when different words or phrases are used in separate claims." *Comark Comm'ns v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed.Cir.1998). This rule is not inflexible, but in order for different terms or phrases in separate claims to be construed to cover the same subject matter, the "written description and prosecution history [should] indicate that such a reading of the terms or phrases is proper." *Nystrom v. Trex Co.,* 424 F.3d 1136, 1143 (Fed.Cir. 2005). Nothing in the specification of the '114 patent indicates that the claims should all be narrowly construed. To the contrary, the specification emphasizes the broad range of possibilities by which an overtime interval can be calculated and assigned. '114 patent, Col. 13, *l.* 26—Col. 15, *l.* 15.

The context of claim 82 only requires that the "second time interval" be "used" in some manner to extend the auction bidding time. Claim 82 does not require that the overtime be added to the end of the initially scheduled closing time. The claim is written broadly enough to cover a program written so that the "overtime" begins

4. For example claim language could use "second time interval" in such a way as to limit it to a given number of minutes. But claim 82, limitation (c) states only that the second time interval is used in some manner. Nothing in the claim, the patent, or the prosecution history hints that the second time interval must be determined by a set number of minutes. It would be easy for an undergraduate computer science student, let alone one of skill in the art, to program a sequence in which the second time interval was calculated as a multiple of the time between receipt of the trigger bid and the end time. Emptoris provided no basis in the patent or its prosecution history to limit any of the claims by narrowly defining this single term.

at the time the trigger bid is received. This is exactly what the accused Emptoris products in question do. Given the court's construction of "second time interval," Emptoris' argument that its software lacks a "second time interval" must fail. The Emptoris software's "extension period" is a time interval that is added at the time the triggering bid is received to extend overtime. That is within the scope of claim 82. Emptoris presented no material dispute of fact or law as to the other claim limitations of claim 82 of the '114 Patent.

### Made, Sold and/or Used Within the United States

As a final matter, Ariba argues that Emptoris has made, sold, and/or used the Emptoris 5.2, 6.1, and 7.0 products to perform electronic auctions within the United States. Emptoris does not present any arguments rebutting Ariba. It is not entirely clear whether the software products were made within the United States because at least a portion of the coding was performed in India. However, there is no dispute that, at a minimum, Emptoris sold and used the software in the United States. Therefore, the court finds that Emptoris' 5.2, 6.1 and 7.0 products infringe claim 82 of the '114 Patent.

IT IS THEREFORE ORDERED that Plaintiff Ariba's Motion for Partial Summary Judgment [Doc. # 167] is **GRANTED IN PART.** Emptoris' 5.2, 6.1 and 7.0 software products infringe claim 82 of the '114 Patent.

### APPENDIX A

Although Emptoris raised no dispute about other claim limitations, for ease of reference the following is an outline of the way the other limitations read on the accused products.

1. *Preamble: A machine-readable medium whose contents cause a computer to control overtime in an electronic auction, by performing:*

Emptoris' software satisfies the preamble. The products are machine-readable medium because they are software applications running on a computer. They control auctions, including a period of extra time bidding, triggered by a bid that extends the auction.

2. *Limitation (a): defining a first time interval, a second time interval, a first overtime condition and a first closing time for a first lot, wherein said first overtime condition comprises:*

Emptoris' software contains a "first time interval" because the Emptoris software allows for the setting of a predetermined time period during which a bid can trigger an extension of overtime. The "first overtime condition" is "a property of a bid that triggers overtime." Emptoris' software defines the "first overtime condition" by providing a template that permits the bidder to select characteristics of the bid that will trigger overtime. A "lot" is one or more item, in accordance with the court's construction of "one or more items grouped for bidding." Items are a necessary part of an auction. Emptoris' argument that its software does not contains a "second time interval," is dealt with in the body of the court's order.

3. *Sub-limitation (a)[1]: "receiving a plurality of bids each having a bid price;"*

The court construed a bid as "the terms on which a seller offers to provide something requested by a buyer or on which a buyer offers to acquire something from a seller." Receiving more than one bid is essential to the operation of an auction. Emptoris' software performs auctions and

Emptoris does not suggest that it only receives one bid during an auction.

4. *Sub-limitation (a)[2]: "ordering each bid from a best bid price to a worst bid price;"*

Ariba argues that this sub-limitation is beyond genuine dispute because the Emptoris products save the bid's ordinal position. Emptoris does not dispute this sub-limitation, and the court finds that it is met.

5. *Sub-limitation (a)[3]: "receiving a bid having a bid price other than said best bid price;"*

The Emptoris software, versions 5.2, 6.1 and 7.0 can extend auctions based on "behind-market" bids, thus additional bids are received besides the best bid price and this sub-limitation is met.

6. *Limitation (b): "determining whether said first overtime condition occurs during said first time interval;"*

As discussed *supra*, the Emptoris software has a first overtime condition. The Emptoris software determines if the first overtime condition occurs during the first time interval. If it does, the Emptoris software adds time to the triggering event, which ultimately extends the auction time.